UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA COLUMBIA DIVISION

Michael J. Squirewell,

4840 Forest Dr

P.O. Box 6134

Columbia, SC 29260

    Plaintiff(s),

vs.

Alight Solutions, LLC

320 South Canal Street

50th Floor of BMO Tower

Chicago IL, 60606

4 Overlook Point Ste 40P

Lincolnshire IL, 60069

    Defendant(s).

Case No.: 3:25-cv-13349-JDA-SVH

**COMPLAINT**

*(JURY TRIAL DEMANDED)*

(title of pleading)

Introduction

1. **Nature of Action**: Plaintiff Michael J. Squirewell ("Plaintiff") brings this action against his employer, Defendant Alight Solutions, LLC ("Defendant" or "Alight"), to remedy violations of federal employment laws. Plaintiff, a qualified individual with disabilities, suffered unlawful discrimination and

Page **1** of **17**

United States District Court

DISTRICT OF SOUTH CAROLINA COLUMBIA DIVISION-COMPLAINT

retaliation in violation of the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"). While on approved FMLA leave for serious health conditions, Plaintiff's health insurance benefits were improperly terminated (see Exhibit B), and upon his return, he was issued disciplinary "documented coaching" for absences that were protected by law (see Exhibit D). Plaintiff also brings claims under the Fair Labor Standards Act ("FLSA") for Defendant's failure to pay earned wages (including overtime) in a timely and lawful manner (see Exhibit F). Plaintiff seeks equitable relief, damages, and all other appropriate relief to redress these violations.

2. **Summary of Claims:** Defendant (a) discriminated against Plaintiff on the basis of disability by failing to accommodate his medical need for leave and by subjecting him to disparate treatment, in violation of the ADA; (b) interfered with Plaintiff's FMLA rights by canceling his group health insurance during his protected leave (Ex. B) and retaliated by issuing formal discipline (Ex. D) upon his return; and (c) violated the FLSA by failing to pay Plaintiff for all hours worked (Ex. F). Plaintiff has exhausted any prerequisite administrative procedures (see Exhibit A, EEOC Right-to-Sue Notice) and now timely files this Complaint to vindicate his rights.

Jurisdiction and Venue

3. **Federal Question Jurisdiction:** This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under federal laws – including the ADA, 42 U.S.C. § 12101 et seq.; the FMLA, 29 U.S.C. § 2601 et seq.; and the FLSA, 29 U.S.C. § 201 et seq. The ADA claim is authorized by 42 U.S.C. § 12117 (incorporating the powers, remedies, and procedures of Title VII), and the FMLA claim is authorized by 29 U.S.C. § 2617(a) (private right of action for damages and equitable

relief). This Court also has authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201-2202.

3. **Personal Jurisdiction**: Defendant is subject to personal jurisdiction in South Carolina because it conducts substantial business in this State and committed unlawful acts here. At all relevant times, Plaintiff was employed by Defendant in Columbia, South Carolina (within this District). The claims arise from Defendant's wrongful conduct directed toward Plaintiff in South Carolina.

4. **Venue**: Venue is proper in this District and Division under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Columbia Division of the District of South Carolina. Plaintiff worked remotely from Columbia, SC, and the decisions to cancel his benefits, deny his leave accommodations, and adjust his pay were made and felt in this District. Venue is additionally proper because Defendant operates in this District and employs Plaintiff here.

5. **Conditions Precedent**: To the extent required, Plaintiff has satisfied all conditions precedent to suit. Plaintiff dual-filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge No. 440-2025-01427, alleging disability discrimination and retaliation under the ADA (and raising related FMLA issues). The EEOC issued a Notice of Right to Sue dated on or about August 14, 2025, which entitles Plaintiff to initiate this civil action. This Complaint is filed within 90 days of Plaintiff's receipt of the Right to Sue notice. (No administrative exhaustion is required for the FMLA or FLSA claims.)

Parties

7. **Plaintiff**: Michael J. Squirewell is a citizen and resident of the State of South Carolina, residing in Richland County. Plaintiff has been employed by Defendant Alight Solutions, LLC since on or about September 19, 2022. He holds

**United States District Court**
DISTRICT OF SOUTH CAROLINA COLUMBIA DIVISION-COMPLAINT

the position of Senior Customer Care Representative ("Sr. CCR"), which is a full-time, non-exempt (hourly) role handling customer service calls on behalf of Defendant's clients. Plaintiff's work location is virtual/remote; however, for jurisdictional purposes he is based in Columbia, South Carolina. At all times relevant, Plaintiff was an "employee" as defined by the ADA (42 U.S.C. § 12111(4)), FMLA (29 U.S.C. § 2611(2)), and FLSA (29 U.S.C. § 203(e)), and was eligible for the protections of those statutes. Plaintiff is presently proceeding pro se but reserves the right to obtain counsel and to seek attorney's fees as allowed by law (if represented) in the event of a favorable outcome.

7. **Defendant:** Alight Solutions, LLC is a limited liability company authorized to do business in South Carolina. Defendant's principal place of business is 320 S. Canal Street, 50th Floor, Chicago, Illinois 60606. Defendant provides human resources and benefits administration services to corporate clients nationwide. At all relevant times, Defendant employed well over five hundred employees globally and is an "employer" within the meaning of the ADA (42 U.S.C. § 12111(5)), FMLA (29 U.S.C. § 2611(4)), and FLSA (29 U.S.C. § 203(d)). Defendant was Plaintiff's employer for all times pertinent to this action. Defendant may be served with process through their registered agent or any other method allowed by law.

Factual Allegations

8. On June 10, 2024, Plaintiff initiated a period of statutorily protected leave pursuant to the Family and Medical Leave Act (FMLA). Despite the lawful exercise of this right, Defendant unilaterally terminated Plaintiff's employer-sponsored health insurance effective June 24, 2024, in direct contravention of the advance notice requirement codified at 29 C.F.R. § 825.210(c) **(see Exhibit B – Health Coverage Cancellation Notice).**

9. This premature termination precipitated a lapse in medical coverage that persisted through July 21, 2024, during which time Plaintiff's providers suspended ongoing treatment and imposed full out-of-pocket charges for medical services rendered between June 16 and June 18. These financial and clinical disruptions materially impaired Plaintiff's capacity to furnish the supplemental documentation necessary to support an extension of his FMLA leave **(see Exhibit B)**.

10. On July 25, 2024, Defendant issued a formal denial of Plaintiff's FMLA extension **(see Exhibit C – FMLA Leave Denial Notice)**. Merely four business days later, on July 29, 2024, Defendant imposed disciplinary action predicated upon absences falling within the contested leave period **(see Exhibit D – Documented Coaching Memorandum)**. This temporal proximity constitutes persuasive indicia of retaliatory motive under 29 U.S.C. § 2615(a)(2).

11. On October 19, 2025, Defendant terminated Plaintiff's Short-Term Disability (STD) wage replacement under Claim #25090800301, notwithstanding a then-active medical certification substantiating disability through December 2, 2025. Although the legal implications of this conduct are the subject of a separately filed federal action under the Employee Retirement Income Security Act (ERISA) in the Northern District of Illinois, its procedural and emotional consequences remain relevant to the present proceedings.

12. Defendant framed the cessation of STD benefits as a "suspension" pending additional documentation, notwithstanding system records indicating that the requisite documentation had been received and marked "complete." While Defendant has asserted that its STD plan is exempt from ERISA oversight, this position is contested in the parallel Illinois action and referenced here solely for contextual completeness.

**United States District Court**
DISTRICT OF SOUTH CAROLINA COLUMBIA DIVISION-COMPLAINT

13. In a prior incident involving Claim #24121600289, Plaintiff experienced a delay in the disbursement of approved STD benefits. Although leave from January 2 through February 2, 2025, had been approved, the wage replacement for the period January 2-17 was omitted from the January 24 payroll and not remitted until February 7, 2025, exacerbating Plaintiff's financial and psychological distress.

14. Between October 28 and November 8, 2024, Plaintiff recorded time entries reflecting full or near-full workdays, inclusive of ADA-accommodated breaks. On November 10, 2024, Plaintiff's direct supervisor, Luis Daniel Fuentes, instituted a retroactive "blanket adjustment" that reduced each day's recorded hours to 7.75 or fewer. For example, Plaintiff's entry of 6.5 hours on October 31 was reduced to 5.75 by the supervisor and further revised to 6.0 by administrative staff member Bryant Brown. These unilateral reductions occurred without Plaintiff's consent or real-time notification (**see Exhibit F – EthicsPoint Report / Timecard Documentation**).

15. Following this conduct, Plaintiff submitted an EthicsPoint complaint on November 13, 2024, alleging unlawful wage manipulation (**see Exhibit F**). A subsequent HR investigation yielded a partial correction: on November 14, time entries were adjusted to better reflect Plaintiff's actual labor, and on November 20, 2024, Defendant issued an off-cycle payment to rectify the under compensation. This incident stemmed from Defendant's indiscriminate imposition of an unpaid break deduction, contrary to individualized workload documentation.

16. On December 18, 2024, Defendant rescinded the disciplinary coaching previously issued on July 29, 2024, following the retroactive approval of an Intermittent Leave of Absence (ILOA) covering the disputed time (**see Exhibit E –**

**Rescission/Correction Notice**). This reversal effectively acknowledged that the disciplinary action was improperly predicated on protected leave activity.

17. Plaintiff's eligibility for promotion to Senior Customer Care Representative (Sr. CCR) was repeatedly denied on the grounds that he failed to satisfy a minimum number of days in active client engagement. This calculation excluded days covered by approved FMLA leave between June 10 and July 22, 2024, thereby penalizing Plaintiff for exercising protected rights in violation of 29 C.F.R. § 825.215(c)(2) **(see Exhibit D)**.

18. In September 2025, during administrative proceedings related to Claim #25090800301, Defendant's Behavioral Health Case Manager disseminated unsolicited, non-essential medical inquiries—referred to internally as "bonus questions"—to Plaintiff's provider. These inquiries sought data unrelated to essential job functions, including off-duty behavior and medication side effects, and were sent absent valid HIPAA authorization **(see Exhibit G – Clarification Questions to Provider)**. Such conduct likely contravenes both 45 C.F.R. § 164.508 (HIPAA privacy requirements) and 42 U.S.C. § 12112(d) (ADA medical inquiry restrictions).

19. Cumulatively, these actions have resulted in significant and ongoing harm to Plaintiff, including the accrual of uncovered medical expenses, deferred earnings, and the forfeiture of career advancement opportunities. These material deprivations have been compounded by psychological harm, particularly the exacerbation of existing mental health conditions due to sustained administrative antagonism and procedural opacity. While this Complaint does not seek ERISA-based relief in this forum, the facts described herein contribute to a broader continuum of misconduct that implicates both this South Carolina action and Plaintiff's federal ERISA claim pending in the Northern District of Illinois **(see Exhibit H – Damages Valuation Schedule)**.

20. Plaintiff attaches and incorporates by reference Exhibits A-H, as described in the Exhibit Index, under Fed. R. Civ. P. 10(c).

## Causes of Action

### Count I – Disability Discrimination in Violation of the ADA (Disparate Treatment and Failure to Accommodate)

8. Plaintiff realleges and incorporates by reference all preceding paragraphs.

9. Plaintiff is a qualified individual with a disability under the Americans with Disabilities Act (ADA). He has physical and/or mental impairments that substantially limit one or more major life activities, a documented history of such impairments, and was regarded by Defendant as having a disability. At all material times, Plaintiff was able to perform the essential functions of his CCR position with or without reasonable accommodations. Defendant is a covered employer under the ADA and has actual or constructive knowledge of Plaintiff's disability status.

10. Defendant, acting through its supervisors and agents, subjected Plaintiff to adverse employment actions based on disability. These included: (a) the unjustified denial or undue delay of Plaintiff's medically supported request for an extended leave in July 2024 (see Exhibit C – FMLA Leave Denial Notice); (b) the termination of Plaintiff's group health coverage during a period of protected leave (see Exhibit B – Health Coverage Cancellation Notice), thereby treating him less favorably than similarly situated, non-disabled employees; (c) the issuance of formal discipline for medically excused absences (see Exhibit D – Documented Coaching Memorandum); and (d) sustained, disparate scrutiny of Plaintiff's attendance in a manner not applied to other employees. Collectively, these actions materially altered the terms and conditions of Plaintiff's employment, placing him under threat of termination and disqualifying him from advancement opportunities.

11. Plaintiff's disability was a motivating factor in the adverse actions described. Defendant's willingness to accommodate Plaintiff in earlier instances shifted to resistance when his condition became more serious and necessitated extended medical leave. Defendant's decision to cut off benefits, refuse additional accommodations when returning to work, and subsequently discipline Plaintiff upon his premature return reflects discriminatory animus in violation of 42 U.S.C. § 12112(a).

12. Defendant also violated its duty under 42 U.S.C. § 12112(b)(5) by failing to engage in an interactive process or consider reasonable accommodations. Plaintiff's July 2024 request for a brief leave extension was medically certified, finite in duration, and objectively reasonable. Rather than evaluate interim solutions—such as unpaid leave, modified duty, or phased reintegration—Defendant summarily denied the request (see Exhibit C). In parallel, Defendant's cancellation of Plaintiff's health insurance (Exhibit B) foreclosed access to essential care, undermining any purported attempt to accommodate his condition.

13. As a direct consequence, Plaintiff incurred significant damages including out-of-pocket medical expenses, emotional distress, loss of medical coverage, and reduced access to advancement. These harms entitle Plaintiff to compensatory damages, equitable remedies (including restoration of employment benefits and seniority), and punitive damages due to Defendant's willful and reckless disregard of his rights under the ADA.

Count II – Retaliation in Violation of the ADA

22. Plaintiff reasserts and incorporates by reference all prior paragraphs.

23. Plaintiff engaged in protected activity under the ADA by requesting accommodations (intermittent leave and an extended leave period) and raised

concerns with Human Resources and leave management in July 2024 regarding discriminatory treatment (see Exhibit C). These activities constitute opposition to practices made unlawful under 42 U.S.C. § 12203.

24. In retaliation for these protected actions, Defendant: (a) issued formal disciplinary action through a documented coaching memo (Exhibit D) that explicitly referenced leave-related absences; (b) warned Plaintiff that any further absence, regardless of medical necessity, could result in termination; and (c) delayed Plaintiff's advancement despite meeting the criteria for promotion, using the disputed attendance record as a pretext. These acts constituted materially adverse employment actions under the ADA's anti-retaliation provision.

25. The proximity of Plaintiff's protected activity to Defendant's retaliatory conduct demonstrates a causal nexus. Plaintiff filed an internal HR complaint on July 26, 2024, following the denial of his extended leave (Exhibit C); on July 29, 2024, he received formal discipline citing protected absences (Exhibit D). HR's refusal to remove the disciplinary record despite clear objections further evidences retaliatory intent.

26. Defendant's conduct violated 42 U.S.C. § 12203(a). No legitimate non-retaliatory justification exists for penalizing Plaintiff for leave previously classified as protected. Any reliance on a neutral attendance policy is undermined by Defendant's inconsistent enforcement and shifting justifications following Plaintiff's complaints.

27. Plaintiff has sustained quantifiable and intangible harms, including emotional distress, reputational injury, lost wages, and blocked advancement opportunities. Plaintiff seeks compensatory and punitive damages, as well as equitable remedies including removal of the retaliatory discipline (Exhibit E, rescission notice) and an injunction against continued retaliation.

Count III – Interference with Rights Under the FMLA

28. Plaintiff incorporates all prior allegations by reference.
29. Plaintiff was an eligible employee under the Family and Medical Leave Act (FMLA) at all relevant times, and Defendant was a covered employer. Plaintiff took protected leave from late 2023 through March 2024, and again from June 10 to July 7, 2024, with a documented request to extend the latter to July 22 (Exhibit C).
30. Defendant unlawfully interfered with Plaintiff's FMLA rights by terminating his group health insurance during the pendency of his protected leave (Exhibit B). These cancellations occurred without the fifteen-day notice required under 29 C.F.R. § 825.212, violating the continuity of coverage provision set forth in 29 U.S.C. § 2614(c)(1).
31. Additional interference arose when Defendant denied the extension request (Exhibit C) for leave through July 22, 2024, and then penalized Plaintiff with an attendance-related disciplinary action upon return (Exhibit D). Such conduct contravenes 29 C.F.R. § 825.220(b), which prohibits using FMLA-protected leave as a basis for adverse employment decisions.
32. Defendants' administrative failures further demonstrate a lack of good faith. These included misclassification of leave designations, poor interdepartmental coordination between ALA, Payroll, and HR, and failure to issue required written notices. The resulting confusion caused payroll miscalculations, improper deductions, and unauthorized coverage lapses, cumulatively depriving Plaintiff of statutory rights.
33. Plaintiff suffered economic loss from uncovered medical costs, forfeited insurance premiums, and foregone wages resulting from a premature return to work. Plaintiff seeks relief under 29 U.S.C. § 2617, including monetary

compensation, liquidated damages due to Defendant's bad faith, and injunctive relief mandating FMLA compliance training for responsible personnel.

Count IV – Retaliation in Violation of the FMLA

34. Plaintiff reasserts all preceding claims.
35. Plaintiff exercised protected rights under the FMLA by taking medical leave, requesting an extension in July 2024 (Exhibit C), and submitting internal complaints regarding leave denial and insurance cancellations (Exhibit B).
36. In response, Defendant imposed a disciplinary coaching on July 29, 2024 (Exhibit D), specifically referencing absences tied to Plaintiff's FMLA leave. This action rendered Plaintiff ineligible for timely promotion and created an atmosphere of retaliatory threat, thereby discouraging further use of medical leave. These acts meet the standard for materially adverse employment actions under the FMLA.
37. The rapid sequence of events—complaints filed in late July followed by discipline days later—supports the finding of causation. Defendant's proffered justifications are unconvincing, given that the absences had previously been deemed permissible and the disciplinary response coincided with Plaintiff's opposition to administrative practices.
38. Plaintiff incurred monetary losses including missed promotions, delayed pay increases, and emotional and reputational harm. Plaintiff seeks compensatory and liquidated damages under 29 U.S.C. § 2617, along with equitable relief including the expungement of disciplinary records (Exhibit E) and injunctive safeguards against further retaliation.

Count V – Violation of the Fair Labor Standards Act (FLSA)

39. Plaintiff incorporates by reference all preceding allegations.

40. At all relevant times, Plaintiff was a non-exempt employee entitled to minimum wage and overtime compensation under the FLSA. In late 2024, Plaintiff worked in excess of 40 hours in one or more workweeks. However, managerial edits to Plaintiff's time records reduced his credited hours to 37.3, depriving him of overtime compensation, in violation of 29 U.S.C. §§ 206 and 207 (see Exhibit F – EthicsPoint Report / Timecard Documentation).

41. Defendant further failed to remit payment on the regular payroll schedule. Compensation for the missing hours was only provided via off-cycle payment on November 20, 2024 (Exhibit F), a delay that courts recognize as tantamount to nonpayment.

42. These violations were willful. Timecard adjustments were deliberate and conducted without proper verification. As a sophisticated HR services provider, Defendant knew or should have known the FLSA's requirements. The need for Plaintiff to initiate internal complaints before receiving redress underscores Defendant's failure to ensure wage compliance.

43. Plaintiff seeks all remedies available under 29 U.S.C. § 216(b), including back wages, liquidated damages, and reimbursement of attorney's fees and costs. Plaintiff further requests injunctive relief requiring Defendant to institute accurate timekeeping and payroll practices.

Count VI – Violation of the South Carolina Payment of Wages Act (SCPWA)

44. Plaintiff reasserts all preceding paragraphs.

45. Defendant qualifies as an "employer" and Plaintiff as an "employee" under S.C. Code Ann. § 41-10-10.

46. Defendant failed to remit timely and complete payment for wages earned in late October and early November 2024. These deficiencies are documented in

timekeeping discrepancies and corroborated by corrective action taken only after Plaintiff's EthicsPoint complaint (Exhibit F).

47. Managerial adjustments to Plaintiff's hours were made without notice or opportunity to contest, in violation of the SCPWA's mandate for timely and accurate payment of earned wages.

48. Defendant's delay in wage payment, despite knowing the hours worked and only resolving the matter in response to a formal complaint, constitutes a knowing and willful violation of the statute.

49. Plaintiff seeks relief under S.C. Code Ann. § 41-10-80(C), including payment of withheld wages, treble damages, interest, costs, and attorneys' fees. Plaintiff also seeks declaratory and injunctive relief to compel implementation of lawful payroll practices and prevent future violations of state wage law.

Plaintiff brings this claim solely in this Court pursuant to its supplemental jurisdiction (28 U.S.C. § 1367) and seeks all relief available under the South Carolina Payment of Wages Act."

**Prefatory Statement and Prayer for Relief**

Plaintiff estimates total damages exceeding $75,000, exclusive of interest and costs, and will prove exact amounts at trial. A Damages Valuation Schedule summarizing the categories of loss is attached as Exhibit H and incorporated by reference for valuation and settlement purposes.

**Prayer for Relief**

**WHEREFORE,** Plaintiff respectfully prays that the Court enter judgment in his favor and grant the following relief against Defendant:

**A. Declaratory Relief.** A declaration that Defendant's actions, as set forth above, violated Plaintiff's rights under the ADA, FMLA, and FLSA. This includes declaring that Defendant's cancellation of health benefits during FMLA leave was unlawful, that the discipline issued to Plaintiff for leave-related absences was unlawful, and that the failure to timely pay Plaintiff's wages was unlawful.

**B. Injunctive and Equitable Relief.** Preliminary and permanent injunctions prohibiting Defendant from engaging in such unlawful employment practices in the future. This may include an order requiring Defendant to reinstate Plaintiff's rights and benefits, such as:

   a. Removal of the July 2024 "Documented Coaching" and any related attendance points from Plaintiff's record.

   b. Reinstatement of any lost PTO or leave benefits that Plaintiff was forced to use or lost due to Defendant's interference; and

   c. Requiring Defendant to provide FMLA training to its managers and HR personnel and to post notices of employees' FMLA rights (to remedy the interference that occurred).

   d. If Plaintiff is still employed by Defendant at the time of judgment and if the work environment remains intolerable, Plaintiff requests **front pay** or reassignment to an equivalent position in a non-retaliatory environment as an equitable remedy (in lieu of reinstatement, if reinstatement is not feasible).

**C. Back Pay and Lost Benefits.** An award of back pay for any loss of income or employment benefits suffered by Plaintiff. This includes wages lost due to delayed or denied promotions or raises (e.g., any difference in pay from the time Plaintiff was eligible for promotion to Sr. CCR in mid-2024 to when he actually received the promotion later), overtime compensation lost due to the unlawful timecard adjustment, and the value of medical bills and expenses that would have been covered by insurance had Defendant not wrongfully terminated coverage. Back pay should be calculated from the date the harm began (for example, July 8, 2024, for the promotion differential and June 24, 2024, for medical expenses) through the date of judgment, plus prejudgment interest. Plaintiff estimates his back pay and benefit losses to be in the tens of thousands of dollars (exact amount to be determined at trial), including $5,000 in out-of-pocket medical costs and $3,000-$5,000 in lost wage opportunities to date (subject to revision as records are analyzed).

**D. Front Pay.** If Plaintiff is unable to return to or continue in his position due to the ongoing effects of Defendant's actions (or if he has been constructively discharged or will be forced to separate from employment for his well-being), Plaintiff seeks an award of front pay to compensate for future lost earnings and benefits. Plaintiff requests front pay for a reasonable period to make him whole (for example, two to three years of pay at his current rate, or as determined by the Court), including the value of health insurance benefits, to compensate for the loss of future income caused by the damage to the employment relationship.

**E. Compensatory Damages.** An award of compensatory damages in an amount sufficient to fully compensate Plaintiff for the emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life he has experienced

as a result of Defendant's wrongful conduct. Plaintiff was subjected to tremendous stress—fearing the loss of his job and healthcare, suffering anxiety attacks due to uncertainty and financial strain, and enduring humiliation of being disciplined for being ill. He also experienced aggravation of his medical condition due to the stress. Plaintiff suggests that a fair and reasonable amount to compensate for his emotional distress is no less than $150,000, and up to $200,000, or such higher amount as a jury may deem proper. This falls within the applicable ADA statutory cap (given Defendant's size, the cap for combined compensatory and punitive damages is $300,000), and Plaintiff's request for emotional distress alone is below that cap.

**F. Punitive Damages.** An award of punitive damages to punish Defendant for its willful, malicious, or recklessly indifferent conduct and to deter similar misconduct in the future. Defendant is a sophisticated employer that egregiously violated federal law in how it treated Plaintiff, an employee struggling with health issues. Such conduct warrants punitive damages at the higher end of the statutory range. Plaintiff requests punitive damages in the range of $300,000 to $500,000, recognizing that the ADA caps punitive damages at $300,000 for an employer of Defendant's size (which Plaintiff prays the jury will award at the maximum). To the extent that FMLA or FLSA allow punitive or liquidated damages, those are addressed separately. Plaintiff asks the Court and jury to award the maximum punitive amount permissible to send a strong message to Defendant that such unlawful behavior will not be tolerated.

**G. Liquidated Damages (FMLA & FLSA).** An award of liquidated damages as provided by law under the FMLA and FLSA. Under the FMLA, Plaintiff is entitled to liquidated damages equal to the sum of his lost wages/benefits and interest, because Defendant cannot prove that its interference and retaliation were in good faith or that it had reasonable grounds to believe it was not violating the FMLA. Under the FLSA, Plaintiff is entitled to liquidated damages equal to the unpaid wage amounts (for overtime and any minimum wage shortfall). These liquidated damages are mandatory, absent a showing of good faith, which Defendant fails. Plaintiff estimates his liquidated damages (exclusive of attorneys' fees) to include roughly $10,000 (or an equal amount to actual monetary losses) under the FMLA, and approximately $500 under the FLSA (assuming unpaid wages around $250, doubled). The precise sum should be determined at trial and in accordance with 29 U.S.C. §§ 216(b), 2617(a)(1)(A)(iii).

**H. Attorneys' Fees and Costs.** An award of reasonable attorneys' fees and litigation costs incurred in this action, as allowed under the ADA (42 U.S.C. § 12205), FMLA (29 U.S.C. § 2617(a)(3)), and FLSA (29 U.S.C. § 216(b)). Although Plaintiff is prosecuting this case pro se at its inception, he is incurring costs and may seek legal representation as the case progresses. Plaintiff seeks to recover any fees associated with counsel's work if retained (for example, consultation fees or limited-scope representation) and his court costs (filing fees, service fees, etc.). Even as a pro se litigant, Plaintiff asks the Court to award costs per Fed. R. Civ. P. 54(d). Plaintiff notes that under the South Carolina Payment of Wages Act (pled herein under Count VI), attorneys' fees are also mandated for a prevailing employee; he reserves those rights. This prayer for fees is included to preserve entitlement should Plaintiff later retain counsel or otherwise become eligible for fee shifting; it is not a double recovery but an integral part of making Plaintiff whole.

**United States District Court**

DISTRICT OF SOUTH CAROLINA COLUMBIA DIVISION–COMPLAINT

**I. Pre-Judgment and Post-Judgment Interest.** An award of interest on all monetary damages, at the statutory rate, from the earliest date of harm (for back pay and other past damages, pre-judgment interest) and for all damages, post-judgment interest from the date of judgment until paid in full, to compensate Plaintiff for the loss of use of those funds.

**J. Further Relief.** Such other and further relief as the Court deems just and proper. This may include, for example, requiring Defendant to provide a neutral employment reference for Plaintiff (to mitigate the impact of the retaliatory discipline on his record), or any other equitable relief that the interests of justice demand.

Jury Demand

Plaintiff hereby demands a trial by jury on all claims and issues in this Complaint that are triable by a jury, pursuant to Fed. R. Civ. P. 38(b). Plaintiff requests that the jury determine all factual issues and the appropriate amount of damages to be awarded.

Date: November 10, 2025.

Respectfully submitted,

Michael J. Squirewell

(Plaintiff, pro se)

4840 Forest Dr

P.O. Box 6134

Columbia, SC 29260

803-718-3744